**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| Toland International Ltd. and | ) |
|     Marketing Resource Group, Inc. | ) |
|         d/b/a Toland Home Garden | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No.: |
| | ) |
| PH Technologies, LLC and Philip S. Horvath | ) |
| | ) |
|     Defendants. | ) |

## COMPLAINT

Plaintiffs, by their attorneys, Dykema Gossett PLLC, for their complaint against

Defendants, PH Technologies, LLC and Philip S. Horvath, allege as follows:

## NATURE OF THE CASE

1.    Plaintiff, Toland International Ltd., and its predecessor company Toland

Enterprises, Inc., originated and popularized the decorative garden flag (collectively, with

Toland Home Garden, "Toland") and Toland International Ltd. is the owner of the longstanding

U.S. Federal Trademark Registration for TOLAND ® for various garden flags and other garden

products. Marketing Resource Group, Inc., doing business as Toland Home Garden, is the

authorized licensee in the United States of TOLAND trademark, and the TOLAND products are

sold in the United States through catalogs, through representatives and retailers as well as off

Plaintiff's website at www.tolandhomegarden.com.  Defendants, PH Technologies, LLC and its

principal Philip S. Horvath are former resellers of TOLAND branded garden and house flags but,

after Plaintiffs encountered repeated payment issues and other difficulties in the business

1

relationship with Defendants, Plaintiffs ended the relationship with PH Technologies, LLC and Plaintiffs have not sold Defendants any products since 2011.

2.     Despite not being an authorized reseller or being authorized to promote TOLAND® flags on its websites, Defendants have registered and renewed various domain names incorporating the well-known TOLAND trademark, including <tolandflag.com>, <tolandflags.com> and <tolandgardenflags.com> (collectively "Infringing Toland Domain Names"), and are now prominently using and promoting the TOLAND name to sell flags, including the flags of competitors, and selling other decorative products that compete with the TOLAND products offered by Plaintiffs.  Plaintiffs have previously complained to Defendants about such use of the domain names and, in response, Defendants have periodically ceased use and advertising of the TOLAND name on the associated websites and disabled the websites.

3.     Now, Defendants are again currently and actively using the domain names, and redirecting the Infringing Toland Domain Names to Defendants' website, www.gardenhouseflags.com, to sell competing flags and other decorative products.  Defendants' bad faith use of the domain names has already been determined by the World Intellectual Property Organization (WIPO) in a domain name dispute proceeding.  Since the WIPO decision on December 28, 2015, Defendants have recommenced active use in commerce of the Infringing Toland Domain Names that promote the TOLAND products and the products of competitors and actively use the TOLAND name in connection with  non-TOLAND flags and other competing products.  Such use can divert sales, create confusion among consumers, harm goodwill in the TOLAND mark and interfere with Plaintiffs' exclusive rights in the well-known TOLAND trademark.

2

4.    This is a civil action for:  (i) trademark infringement arising under Section 32(1) of the Lanham Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* including willful infringement; (ii) use of false designations of origin in commerce and false advertisement, arising under Section 43(a) of the Lanham Act of 1946, as amended, 15 U.S.C. § 1125(a); (iii) unfair competition, arising under Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a); (iv) federal cybersquatting, arising under Section 43(d) of the Lanham Act, as amended, 15 U.S.C. § 1125(d); (v) the likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name valid at common law under the laws of Indiana, Ind. Code § 24-2-1-0. 1 *et seq.,* (vi) common law unfair competition under the common law of the State of Indiana; and (vii) unjust enrichment under the common law of the State of Indiana.

## JURISDICTION AND VENUE

5.    This Court has original jurisdiction over the claims arising under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over the claims arising under the laws of the State of Indiana pursuant to 28 U.S.C. § 1367.

6.    Founded in 1976, Toland is a wholesaler and retailer of home garden products such as superior decorative art flags, garden decor products, and associated brackets and support stakes, in addition to other outdoor home items ("Toland Goods"). Plaintiff, Marketing Resource Group, Inc. d/b/a Toland Home Garden, resides in the State of Washington, and has been selling the Toland Goods in most states in the country for many years.  As the creator of the art flag, customers have associated Toland as the industry leader for decades. With authorized representatives in 34 states, Toland's flags are widely available to retailers and distributors who can choose from more than 4,000 Toland-exclusive designs created by well-loved artists.

3

7.    For many years, Defendants and Plaintiffs did business and Defendants entered into agreements to purchase the TOLAND flags from Plaintiffs in Washington, with Plaintiffs shipping the flags to Indiana, and Defendants have submitted to personal jurisdiction in this Court because, *inter alia*, Defendants reside in Indiana and have availed themselves to the rights and benefits of the laws of Indiana and engaged in systematic and continuous contacts with the State of Indiana.  Further, upon information and belief, Defendants' websites are available to consumers in Indiana, among other states, and flags and other decorative garden products ("Defendants Goods") can and/or have been advertised, purchased and/or shipped to Indiana.

## THE PARTIES

8.    Toland International Ltd., is a Hong Kong Corporation with its principal place of business at 14/F, Yale Industrial Centre, 61-63 Au Pui Wan St., Fotan, Shatin, N.T., the Hong Kong Special Administrative Region of the People's Republic of China ("Toland International"). For many years, Toland International has been engaged in the design, manufacture and sale of garden flags and other decorative garden products and sells its products through Marketing Resources Group, Inc. d/b/a/ Toland Home Garden ("Toland Home Garden"), a Washington corporation with an address of 273 No. Otto St., Port Townsend, Washington,  98368.  Among other sales channels, Plaintiffs also use the website, www.tolandhomegarden.com, to operate its business and advertise and promote the Toland Goods.  Toland International and Toland Home Garden are owned by the same two individuals, and the companies share all products, marketing, and branding.

9.    PH Technologies, LLC ("PH Technologies") is a limited liability company of Indiana, having an address at  7265 U.S. 20 East, New Carlisle, Indiana, 46552. The president of

PH Technologies is Philip S. Horvath and the Secretary is Catlin Hale.  Catlin Hale has an address in Tennessee.

## FACTUAL BACKGROUND

10.    Plaintiffs have spent a great deal of effort and expense in protecting their valuable intellectual property rights.  Toland International owns the following trademark registration for the TOLAND mark ("TOLAND Mark") in the United States:

| Registration Date | Trademark | U.S. Reg. No. | | Goods |
|---|---|---|---|---|
| 05/20/2008 | TOLAND | 3,429,440 | ☐ | Metal brackets for flags; metal plant support stakes; metal house numbers, Class 6 |
| | | | ☐ | Luminous house numbers; rain gauges, Class 9 |
| | | | ☐ | Oil lanterns, Class 11 |
| | | | ☐ | Non-metal house numbers; plastic flags; non-metal brackets for flags; glassware, namely, gazing globes, Class 20 |
| | | | ☐ | Wasp traps; plant misters in the nature of empty spray bottles, Class 21 |
| | | | ☐ | Cloth flags, Class 24 |
| | | | ☐ | Floor mats, Class 27 |

11.    A copy of the above registration is attached at Exhibit A. The TOLAND Mark has been in use in the United States since at least as early as 1996, and the registration is incontestable.  Plaintiffs have invested substantial resources and devoted significant creative energies to the development of the TOLAND Mark and the goodwill associated therewith, and

5

the TOLAND Mark has come to be recognized as strong and well known mark among the relevant purchasers.

### Defendants' Activities Resulting In, *Inter Alia*, Trademark Infringement and Unfair Competition

12.     Defendants, and a predecessor in interest to Defendants, purchased TOLAND flags from Plaintiffs for many years.  Plaintiffs learned in approximately 2008 that Defendant had acquired a domain name incorporating the TOLAND trademark, <tolandflags.com>, and that the domain name was used to sell non-Toland products.  After Plaintiffs questioned Defendants' use, in response, Mr. Horwath advised he recently acquired the domain name and agreed the website needed to be updated.  Thereafter, Plaintiffs thought the issue had been resolved until 2012 when the parties had further correspondence.  After raising an objection to Defendants, to try to resolve the issue, Toland Home Garden indicated that Defendants could use the <tolandflags.com> domain name only if the Defendants used it exclusively to sell Plaintiff's TOLAND flags.  In approximately 2011 and 2012, Defendants' account again went into arrears and, at that time, Plaintiffs ended the reseller/distributor relationship and Defendants did not purchase any more TOLAND flags from Plaintiffs.  Thereafter, Plaintiffs requested that Defendants cease use of the domain name <tolandflags.com>.   Defendants subsequently refused to cease use and/or transfer the domain names, and advised that Defendants invested significant capital in acquiring the domain name <tolandflags.com> and positioning the website in the on-line market.  Thereafter, the parties sought to reach an amicable resolution to the dispute but such negotiations failed.

13.     Subsequently, Plaintiffs learned that Defendants had again commenced use of the domain name <tolandflags.com>, and that such website redirected to an active website owned by

Defendants, <snapdragonflags.com>, wherein TOLAND flags and other flags were advertised and offered for sale and Toland International sent a cease and desist letter to Respondent on October 24, 2014.  A true and correct copy of Plaintiff's October 24, 2014 letter is attached hereto as Exhibit B. In response to this letter, Defendants' counsel, R. Tracy Crump, confirmed Defendants would cease all use of the domain name and website at <tolandflags.com> effective November 10, 2014. A true and correct copy of this letter dated November 10, 2014 is attached as Exhibit C. Shortly thereafter, Defendants deactivated the website.

14.    During a subsequent routine status check, Plaintiffs learned that usage of the domain name <tolandflags.com>, and the corresponding website to which the domain resolved, remained active.  The website actively promoted the sale of both TOLAND flags and other, competing flags. See Exhibit D for true and correct copies of screenshots dated October 20, 2014 and December 18, 2014, which show multiple unauthorized uses of the  TOLAND Mark on Respondent's websites at <tolandflag.com>, <tolandflags.com> and <tolandgardenflags.com>.

15.    Given Defendants' failure to abide by their assurances, Toland International sent a letter to Defendants' counsel on June 1, 2015, objecting to the ongoing unauthorized use of the <tolandflags.com> domain name and website, and informing Defendants the same objections applied to Defendants' registration and use of <tolandgardenflags.com> and several email addresses affiliated with both sites, appearing as "contact@tolandflags.com" and "info@tolandgardenflags.com."  A true and correct copy of Toland International's June 1, 2015 letter is attached hereto as Exhibit E. The email addresses were displayed on the websites at www.tolandflag.com and www.tolandgardenflags.com to elicit customer inquiries regarding the purchase of flags. See the screenshots in Exhibit F, which evidence the unauthorized use of Plaintiff's TOLAND trademark in these email addresses.

7

16.    In response to Toland International's June 1, 2015 letter, Defendants' counsel claimed Defendants purchased the rights to a group of "Toland" domain names from a former Toland flag retailer.  See Paragraph 2 of Defendant's June 10, 2015 letter, attached hereto as Exhibit G. Even if this were the case, Defendants have never been authorized by Plaintiffs to register any domain name incorporating the TOLAND mark and to advertise and promote non-TOLAND products, and products that compete with Plaintiffs' products, under any TOLAND name or domain name.

17.    To try to address Defendants' misuse of the TOLAND Mark, Toland International filed a domain name dispute at WIPO, but the WIPO panelist deciding the issue could not ascertain that the domain names were initially "*registered* in bad faith" and the panelist declined to transfer the domain names.

18.    After the WIPO Decision and the subsequent renewal of the domain name, tolandflag.com, on April 17, 2017, accessing the tolandflag.com site redirected the user to a website for GardenHouseFlags.com, prominently showing the "Toland Flags" icon and name across the header, and depicting four TOLAND flags available for purchase.  The GardenHouseFlags.com website identifies PH Technologies, LLC as the copyright owner.  The registrant name for the GardenHouseFlags.com website is Philip Horvath and the registrant organization is PH Technologies, LLC, as shown in the WHOIS record at Exhibit H.  The screenshot for the GardenHouseFlags.com website is depicted below.



19.     After the WIPO Decision and the subsequent renewal of the domain name, tolandflag.com, on April 17, 2017, accessing the tolandflags.com site redirected the user to a website for GardenHouseFlags.com, prominently showing the "Toland Flags" icon and name across the header, and depicting four TOLAND flags available for purchase.  The screenshot is depicted below.



20.    After the WIPO Decision and the subsequent renewal of the domain name, tolandflag.com, on April 17, 2017, accessing the tolandgardenflags.com site redirected the user to a website for GardenHouseFlags.com, prominently showing the "Toland Flags" icon and name across the header, and depicting four TOLAND flags available for purchase.  The screenshot is depicted below.



21.    The domain names, <tolandflag.com>, <tolandflags.com> and <tolandgardenflags.com>, have been registered by Philip Horvath.  The registrant name for the <tolandflag.com>  domain name is Philip Horvath and the registrant organization is PH Technologies, LLC, as shown in the WHOIS record at Exhibit I.  The registrant name for the <tolandflags.com>  website is Philip Horvath and the registrant email address is phil@ph-technologies.com,  as shown in the WHOIS record at Exhibit J.  The registrant name for the <tolandgardenflags.com>  website is Philip Horvath and the registrant email address is phil@ph-technologies.com,  as shown in the WHOIS record at Exhibit K.   Philip Horvath has periodically renewed the domain name registrations for the Infringing Toland Domain Names including as recently as April of 2016 and April of 2017.  The website at <ph-technologies.com>

includes links to other websites and online stores and provides contact information as listed in Exhibit L.

22.    The Infringing Toland Domain Names <tolandflag.com>, <tolandflags.com> and <tolandgardenflags.com>, registered and used by Defendants, are confusingly similar to Plaintiff's TOLAND Mark and are being misused without Plaintiffs' permission.  The Infringing Toland Domain Names are merely a combination of Plaintiffs' well known TOLAND Mark with the generic terms "flag", "flags" and "garden" included thereafter.  As described above, Toland owns statutory and common law rights in the TOLAND mark by virtue of its extensive and prior use of the mark in the United States dating back to 1996, and by virtue of the registration for this mark in the United States. The Infringing Toland Domain Names are an almost identical copy of the TOLAND Mark, registered as domain names in the .COM top level domain.  The addition of the generic words "flag", "flags" and "garden" do not distinguish this use.

23.    Given the identical nature of Toland International's registered mark and the disputed domain names, customers, potential customers and those viewing the websites are likely to be confused and believe the domain names <tolandflag.com>, <tolandflags.com> and <tolandgardenflags.com> are associated with, endorsed by or are otherwise sponsored and approved by Plaintiffs, when in fact they are not.  Defendants also use the TOLAND Mark on other websites, such as <snapdragonflags.com> and <gardenflags.net>, and copies of these website pages are attached at Exhibit M.  As shown in Exhibit M, the website <snapdragonflags.com> prominently promotes "Toland flags" recited at the top of the website page "SnapDragonFlags.com – The place for garden flags, house flags, decorative flags, toland flags,…." Defendants also own the website <snappdragon.com and while TOLAND was not used in the visible pages, it was used in the source code, as illustrated in Exhibit N.  Defendants'

website pages list other stores owned by Defendants and such other stores also advertise and/or offer TOLAND flags for sale and other competing products to the Toland Goods and/or include TOLAND in the source code.

24.     WIPO has already determined Defendants' use of the TOLAND name is in bad faith.  A copy of the WIPO Decision is attached as Exhibit O.  At all times, Defendants were aware of the value in the longstanding TOLAND name, and its reputation among purchasers of garden flags and other decorative products.  Plaintiffs use the federal registration symbol ® in connection with the TOLAND Mark and this provides constructive notice to the public, including Defendants, and as former resellers, Defendants had actual notice of Plaintiffs' trademark rights in the TOLAND Mark.

25.     Further, as a means to resolve the dispute, in 2015, Toland International offered to reimburse Defendants for the disputed domain names in the amount of $100 (i.e., a high estimate of reasonable reimbursement fees), yet Defendants countered and demanded "fair market value" instead, the sum of which would exceed the out-of-pocket expenses  Defendants had incurred to date in connection with the domain names.  *See* a true and correct copy of Defendant's letter of August 7, 2015, attached as Exhibit P.

26.     Defendants have built up their business with the improper uses of the TOLAND Mark.  Defendants have admitted they have spent significant time and resources in developing the Infringing Toland Domain Names because they recognize the value and renown of the TOLAND Mark.  Defendants have used search engine optimization to drive traffic to websites using the Infringing Toland Domain Names and TOLAND Mark.  Defendants advised Plaintiffs that their efforts in increasing sales included search engine optimization and acquiring high

ranking URL websites to increase traffic for increased leads, including using popular websites such as the Infringing Toland Domain Names.

27.    Defendants' registration and use of domain names prominently featuring the TOLAND Mark, and the prolific use of the TOLAND Mark in text displayed on Defendants' websites, and hidden in the source code, demonstrates the intentional attempt to attract Internet users to Defendants' competing websites for commercial gain. Such use was well after Plaintiffs notified Defendants of Plaintiffs' rights in the TOLAND Mark. Moreover, Defendants continued this bad faith behavior after providing assurances such behavior would cease. There can be no doubt Defendants were on actual and constructive notice of Plaintiffs' prior rights in the well-known TOLAND Mark based on the ongoing correspondence between the parties. Defendants' blatant disregard for those rights is further evidence of bad faith.

28.    The diversion of consumers to Defendants' websites generated financial loss for Plaintiffs, and likely commercial gain for Defendants.  The diversion to Defendants' websites is also troublesome and time consuming for Plaintiffs' customers who are looking for Plaintiffs' authentic products and website, but are led elsewhere.  Additional harm to Plaintiffs' reputation could result from Defendants' use of the domain names because Plaintiff provides quality products, "made in the U.S.A.," and the quality of other flags and competing products sold on the sites to which some of the disputed domain names resolve and Defendants' other websites is unknown and not under Plaintiffs' control.

29.    By registering and renewing the disputed domain names,  Defendants have prevented Plaintiffs from using the trademark as a domain name in a very key and popular .COM generic top level domain name.  Defendants have also incorporating Plaintiffs' highly valuable TOLAND Mark in metatags associated with Defendants' websites presumably to intentionally

divert internet traffic away from Plaintiffs.  Such unauthorized and improper actions unfairly compete with Plaintiffs and unjustly enrich Defendants at Plaintiffs' expense.

30.     As a former authorized dealer, Defendants knew TOLAND was the company name and trademark for flags and other products and Defendants were on actual notice of Plaintiffs' trademark rights.  Moreover, since 2007 when Plaintiff's trademark registered, Defendants were on constructive notice of trademark rights in the TOLAND Mark.  More recently, Defendants' promise to deactivate the websites, followed by renewed use and "reactivation," further confirms Defendants' bad faith.

## COUNT I -- INFRINGEMENT OF REGISTERED TRADEMARK

31.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 30 above as if fully set forth herein.

32.     Defendants, without authorization from Plaintiffs and with knowledge that Defendants' use of TOLAND is likely to cause confusion has used and is continuing to use spurious designations that are identical to, and confusingly similar to Plaintiffs' TOLAND Mark.

33.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether the Defendants' Goods originate from, or are affiliated with, sponsored by, or endorsed by Plaintiffs.

34.     Defendants have acted with clear knowledge of Plaintiffs' ownership and rights in the TOLAND Mark and to unfairly benefit from the goodwill symbolized thereby.

35.     Defendants' activities as described above constitute infringement of the TOLAND Mark in violation of Section 32(1) of the Lanham Act of 1946, as amended (15 U.S.C. § 1114(1)).

36.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

37.     Upon information and belief, Defendants intend to continue its willful infringing acts, unless restrained by this Court.

38.     Defendants' acts have damaged and will continue to damage Plaintiffs, and Plaintiffs have no adequate remedy at law.

## COUNT II -- FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING

39.     Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 38 above as if fully set forth herein.

40.     Defendants' promotion, advertising, distribution, sale, and/or offering for sale of the Defendants' Goods is likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the Defendants' Goods, and is intended, and is likely to cause such parties to believe in error that the Defendants' Goods have been authorized, sponsored, approved, endorsed or licensed by Plaintiffs or that Defendants are in some way affiliated with Plaintiffs.

41.     Defendants' activities as described above constitute the use of false designations of origin in commerce, and false and misleading descriptions and representations of fact, all in violation of Section 43(a) of the Lanham Act of 1946, as amended (15 U.S.C. § 1125(a)).

42.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

43.     Upon information and belief, Defendants intend to continue its infringing acts, unless restrained by this Court.

44.    Defendants' acts have damaged and will continue to damage Plaintiffs, and Plaintiffs have no adequate remedy at law.

## COUNT III -- UNFAIR COMPETITION

45.    Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 44 above as if fully set forth herein.

46.    Defendants' activities as described above constitute unfair competition in violation of Section 43(a) of the Lanham Act of 1946, as amended (15 U.S.C. § 1125(a)).

47.    Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

48.    Upon information and belief, Defendants intend to continue its infringing acts, unless restrained by this Court.

49.    Defendants' acts have damaged and will continue to damage Plaintiffs, and Plaintiffs has no adequate remedy at law.

## COUNT IV – FEDERAL CYBERSQUATTING, 15 U.S.C. § 1125(D)

50.    Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 49 above as if fully set forth herein.

51.    Defendants, as described above, have registered and used at least three domain names that incorporate a confusingly similar variation of the distinctive TOLAND Mark.

52.    On information and belief, Defendants registered the domain names incorporating the confusingly similar variation of the TOLAND Mark with a bad faith intent to profit from the TOLAND Mark and/or divert consumers from Plaintiffs, and Defendants repeatedly renewed such domain names with a bad faith intent to profit from the TOLAND Mark and/or divert consumers from Plaintiffs.

17

## COUNT V -- TRADEMARK DILUTION AND INJURY TO BUSINESS REPUTATION UNDER THE INDIANA TRADEMARK ACT

53.     Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 52 above as if fully set forth herein.

54.     The TOLAND Mark is famous under the Indiana Trademark Act and is distinctive, and has enjoyed such distinction since long before the time Defendants' commenced use of the TOLAND Mark.

55.     Defendants' activities as described above constitute injury to Plaintiffs' business reputation and dilution of the distinctive quality of the TOLAND Mark, in violation of the laws of Indiana, Ind. Code § 24-2-1-0.1 *et seq.* and Defendants willfully intended to trade on Plaintiffs' reputation and cause dilution of the TOLAND Mark.

## COUNT VI -- COMMON LAW UNFAIR COMPETITION

56.     Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 55 above as if fully set forth herein.

57.     Defendants' activities as described above constitute unfair competition under the common law of the State of Indiana.

58.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

59.     Upon information and belief, Defendants intend to continue its infringing acts, unless restrained by this Court.

60.     Defendants' acts have damaged and will continue to damage Plaintiffs, and Plaintiffs have no adequate remedy at law.

## COUNT VII -- COMMON LAW UNJUST ENRICHMENT

61.     Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1 through 60 above as if fully set forth herein.

62.     Benefits have been conferred upon Defendants by Defendants' unauthorized use of the TOLAND Mark.

63.     Defendants have appreciated, accepted, and retained these benefits.

64.     It is inequitable for Defendants to retain these benefits without the payment of value to Plaintiffs.

65.     Defendants has been unjustly enriched at the expense of Plaintiffs.

66.     Defendants' activities as described above constitute unjust enrichment under the common law of the State of Indiana.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.     That Defendants, its agents, servants, affiliates, representatives, successors and assigns, and all those persons or entities in active concert or participation with any of them who receive actual notice of the injunctive order, be enjoined, preliminarily and permanently from:

(a)     Using the TOLAND Mark or any other mark, symbol or device that is confusingly similar to the TOLAND Mark, including but not limited to the TOLAND Mark; and

(b)     Committing any other act calculated or likely to cause the public to believe that Defendants is in any manner connected, affiliated or associated with Plaintiffs or from otherwise competing unfairly with Plaintiffs.

19

2.     Pursuant to 15 U.S.C. § 1118, that Defendants delivers to Plaintiffs for destruction all material (including, without limitation, all advertisements, promotional materials, and brochures), within its possession, custody or control, either directly or indirectly, that bears the TOLAND Mark or any other designation, symbol or device that is confusingly similar to the TOLAND Mark.

3.     Pursuant to 15 U.S.C. § 1116(a), that Defendants be directed to file with the Court and serve upon Plaintiffs, within thirty (30) days after entry of the injunctive order, a report in writing and under oath setting forth in detail the manner and form by which they have complied with the provisions set forth in paragraphs 1 and 2 above.

4.     That all domain names incorporating the TOLAND Mark owned by Defendants be identified, and forfeited, cancelled, or transferred to Plaintiffs including, but not limited to, domain names, <tolandflag.com>, <tolandflags.com> and <tolandgardenflags.com>.

5.     Pursuant to 15 U.S.C. § 1117(a) and the common law, that Defendants be directed to account to Plaintiffs for all gains, profits, and advantages derived from Defendants' wrongful acts.

6.     Pursuant to 15 U.S.C. § 1117(a) and Indiana, Ind. Code § 24-2-1-0.1 *et seq.*, that Plaintiffs recovers from Defendants the greater of three times the amount of Defendants' profits or any damages sustained by Plaintiffs, together with interest on such amount and the costs of this action.

20

7.    Pursuant to 15 U.S.C. § 1117(a) and Indiana, Ind. Code § 24-2-1-0.1 *et seq.*, that the Court determine that the case is exceptional and that Plaintiffs recover from Defendants its attorneys' fees and the costs of this civil action.

8.    That Plaintiffs be awarded such damages and fees and/or statutory damages and other and further relief as the Court deems equitable, just, and proper.

s/ Todd Gale
**For the Plaintiffs**

Todd Gale
DYKEMA GOSSETT PLLC
10 South Wacker Drive, Suite 2300
Chicago, Illinois  60606
(312) 876-1700 (phone)
(866) 457-8542 (fax)
tgale@dykema.com

Jennifer Fraser (pro hac vice)
DYKEMA GOSSETT PLLC
1301 K Street N.W., Suite 1100 West
Washington, D.C.  20005
(202) 906-8600 (phone)
(855) 255-4358 (fax)
jfraser@dykema.com